# No. 13-5103

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

―――――――――――

**MORTON LIFTIN, the Estate of,
JOHN LIFTIN, Executor,**

**Plaintiffs-Appellants,**

v.

**UNITED STATES,**

**Defendant-Appellee.**

―――――――――――

## ON APPEAL FROM THE JUDGMENT OF THE
## UNITED STATES COURT OF FEDERAL CLAIMS
No. 10-CV-0589; Judge George W. Miller

―――――――――――

## BRIEF FOR THE UNITED STATES

―――――――――――

KATHRYN KENEALLY
  *Assistant Attorney General*

KENNETH L. GREENE            **(202) 514-3573**
JOHN A. NOLET                **(202) 514-2935**
  *Attorneys, Tax Division*
  *Department of Justice*
  *Post Office Box 502*
  *Washington, D.C. 20044*

*September 27, 2013*

# TABLE OF CONTENTS

**Page(s)**

Table of contents ................................................................................. i

Table of authorities ........................................................................... iii

Statement of related cases ................................................................ iii

Glossary ............................................................................................. vii

Jurisdictional statement .................................................................. viii

    A.    Jurisdiction in the Court of Federal Claims ........................ viii

    B.    Jurisdiction in this Court ....................................................... x

Statement of the issue ......................................................................... 1

Statement of the case .......................................................................... 2

Statement of the facts ......................................................................... 3

    A.    Background—the Estate's filing of its estate-tax return ....... 3

    B.    The IRS's assessment of a late-filing penalty and the
           Estate's filing of an administrative claim for refund ........... 10

    C.    The Estate's refund suit filed in the CFC ........................... 12

Summary of argument ....................................................................... 18

Argument:

    The CFC correctly held that the Estate was not entitled to
    the refund and abatement of the late-filing penalty assessed
    against it under I.R.C. § 6651(a)(1), because the Estate failed
    to show that the delinquent filing of its estate-tax return was
    due to reasonable cause and not to willful neglect ........................ 21

    Standard of review ........................................................................ 21

    A.    Introduction ......................................................................... 21

10558105.1

**Page(s)**

B.    The Estate failed to show that that the late filing of its estate-tax return was justifiable because it reasonably relied on the advice of its attorney as to the filing deadline ................................................................................26

    1.    The CFC correctly held that the last nine months of the Estate's filing delinquency was not due to reasonable cause and lack of willful neglect ...............26

    2.    The Estate's arguments that the CFC erred in holding that the last nine months of the delinquent filing were not due to reasonable cause are unavailing ......................................................29

    3.    The Estate's reliance on Dadakis's advice does not constitute reasonable cause and lack of willful neglect for any part of the nearly two-year delay in the filing of its estate-tax return .............................33

Conclusion ............................................................................38
Certificate of service............................................................39
Certificate of compliance......................................................40

10558105.1

# TABLE OF AUTHORITIES

**Cases:**                                                                  **Page(s)**

*Abbott Laboratories v. United States*, 573 F.3d 1327
(Fed. Cir. 2009)..........................................................................21

*Coleman v. Commissioner*, T.C. Memo. 1990-511,
1990 WL 138153 (1990)............................................................31

*Conklin Bros. of Santa Rosa, Inc., v. United States*,
986 F.2d 315 (9th Cir. 1993) .................................................23

*DiPalma v. Commissioner*, 71 T.C. 324 (1978)...............................31

*Estate of Cederloff v. United States*, 2010 WL 3548901
(D. Md. 2010)........................................................................28

*Estate of La Meres v. Commissioner*, 98 T.C. 294 (1992) .. 13, 14, 15
16, 31, 32

*Ferguson v. Commissioner*, 568 F.3d 498 (5th Cir. 2009) .............28

*Fran Corp. v. United States*, 164 F.3d 814 (2d Cir. 1999)............22

*In re Craddock*, 149 F.3d 1249 (10th Cir. 1998)...........................28

*Jacobson v. Commissioner*, T.C. Memo. 2003-227,
2003 WL 21752458 (2003)......................................................28

*Knappe v. United States*, 713 F.3d 1164 (9th Cir. 2013)... 22, 24, 25
32, 34, 36

*McMahon v. Commissioner*, 114 F.3d 366 (2d Cir. 1997) .............22

*Morgan v. Commissioner*, 807 F.2d 81 (6th Cir. 1986)..................28

*Nevada Partners Fund, L.L.C. ex rel. Sapphire II, Inc. v.
United States ex rel. I.R.S.*, 720 F.3d 594
(5th Cir. 2013) .......................................................................30

*Synergy Staffing, Inc. v. United States IRS*,
323 F.3d 1157 (9th Cir. 2003) ...............................................23

*United States v. Boyle*, 469 U.S. 241 (1985) ...................... 14, 22, 23
24, 25, 33

*Welch v. United States*, 678 F.3d 1371 (Fed. Cir. 2012)................21

10558105.1

**Page(s)**

**Statutes:**

28 U.S.C.:

§ 1295(a)(3) ............................................................................... x
§ 1346(a)(1) ............................................................................... x
§ 1491(a) ................................................................................... x
§ 2522 ....................................................................................... x

Internal Revenue Code (26 U.S.C.):

§ 2056 ........................................................................... 11, 15, 20
§ 2056(a) ........................................................................... 5, 34
§ 2056(d) ......................................................................... 17, 34
§ 2056(d)(1) .......................................................................... 5
§ 2056(d)(4) ................................................................... 10, 35
§ 2056(d)(4)(B) ..................................................................... 5
§ 2056A ................................................................................. 5
§ 6018(a) ....................................................................... 21, 25, 32
§ 6075(a) ....................................................................... 21, 25, 32
§ 6081(a) ........................................................................... 21, 32
§ 6402(a) ............................................................................. 10
§ 6511(a) ............................................................................ viii
§ 6532(a) ............................................................................... x
§ 6651 ................................................................................... 22
§ 6651(a)(1) ........................................................... i, viii, ix, 1
                                                                    2, 10, 13
                                                                    18, 20, 21
                                                                    22, 25, 35
§ 6651(a)(2) ......................................................................... 12
§ 7422(a) ........................................................................ viii, x

10558105.1

**Page(s)**

**Miscellaneous:**

Federal Rules of Appellate Procedure:

    Rule 4(a)(1) and (a)(4)(A) .......................................................x

Treasury Regulations (26 C.F.R.):

    § 20.2056A-1(b)........................................................ 10, 17, 35
    § 20.6075-1 ................................................................ 21, 25
    § 20.6081-1(b) ................................................................ 21
    § 20.6081-1(d) ................................................................ 27
    § 301.6651-1(c)(1) ...........................................................ix

Rules of the Court of Federal Claims:

    Rule 12(c)........................................................................ 13
    Rule 59(a)(1) ...................................................................x
    Rule 59(b)(1) ...................................................................x

10558105.1

## STATEMENT OF RELATED CASES

Pursuant to Local Rule 47.5, counsel for the United States state that no other appeal in or from the same civil action or proceeding in the United States Court of Federal Claims has previously been before this Court or any other appellate court, and we are not aware of any related cases pending in this Court or in any other court that will directly affect or be affected by this Court's decision in the pending appeal.

10558105.1

**GLOSSARY**

| Acronym | Definition |
|---|---|
| CFC | Court of Federal Claims |
| Form 706 | Return of federal estate tax |
| Form 843 | Claim for Refund and Request for Abatement |
| Form 4768 | Application for extension of time to file estate-tax return |
| I.R.C. | Internal Revenue Code |
| IRS | Internal Revenue Service |
| JA | Joint Appendix |
| QDOT | Qualified domestic trust |
| RCFC | Rules of the Court of Federal Claims |

10558105.1

# JURISDICTIONAL STATEMENT

## A.    Jurisdiction in the Court of Federal Claims

The Estate of Morton Liftin ("the Estate") filed its federal estate-tax return with the Internal Revenue Service ("IRS") on May 9, 2006, reporting a tax liability of $678,572.25, and an overpayment of tax of $198,727.75 due to the fact that it had previously remitted estimated tax of $877,300.  (JA 71, ¶ 25; JA 309.)[1]  Because the Estate's return was filed well beyond the June 2, 2004, extended due date (JA 309, 483, 572-74), the IRS, on June 12, 2006, assessed against the Estate a late-filing penalty of $169,643.06 pursuant to Internal Revenue Code (26 U.S.C.) ("I.R.C.") § 6651(a)(1).  The overpayment reported by the Estate was applied by the IRS to satisfy the penalty assessment.  (JA 71, ¶ 26; JA 492-95.)

On August 4, 2006, the Estate timely filed with the IRS an administrative claim for refund and abatement of the penalty.  (JA 74, ¶ 43; JA 76-79; JA 126, ¶ 43.)  *See* I.R.C. §§ 6511(a), 7422(a).  The Estate asserted that it should be relieved of the penalty under I.R.C.

---

[1] "JA" references are to the Joint Appendix filed by the Appellants.

10558105.1

§ 6651(a)(1) and Treasury Regulation (26 C.F.R.) § 301.6651-1(c)(1),

because the late filing of its return was "due to reasonable cause and

not to willful neglect." (JA 76-79.) On March 18, 2008, after the Estate

administratively appealed the initial decision of the IRS to disallow the

claim, the IRS partially allowed it, abating $33,928.61 of the penalty.

(JA 74, ¶ 45; JA 126, ¶ 45; JA 492-99.)

As for the remaining portion of the Estate's claim, the Estate

alleged that it never received from the IRS, by registered or certified

mail, a notice of disallowance (JA 74, ¶ 46; JA 126, ¶ 46), and, on

September 1, 2010, the Estate commenced the instant suit against the

Government in the United States Court of Federal Claims ("CFC")

seeking a refund of the remaining penalty assessment, or $135,714.45.

(JA 14-21.) The Government was unable to demonstrate that a notice of

disallowance was sent to the Estate by certified or registered mail. (*See*

JA 260, n. 5.) As a consequence, the Government does not dispute that

two-year statute of limitations on the refund suit was never triggered,

and that the Estate was thus authorized to bring its suit any time after

the expiration of six months from the date it filed its administrative

10558105.1

claim. *See* I.R.C. § 6532(a). The CFC had jurisdiction under I.R.C.

§ 7422(a) and 28 U.S.C. §§ 1346(a)(1), 1491(a).

## B.    Jurisdiction in this Court

The CFC decided the case on the parties' cross-motions for

summary judgment, granting the Government's motion and denying the

Estate's motion. (JA 1-12.) On April 3, 2013, it entered a judgment in

favor of the Government. (JA 13.) That judgment is a final, appealable

order that disposed of all of the claims of all of the parties. On April 25,

2013, within 28 days after entry of judgment, the Estate filed a motion

for reconsideration, which tolled the 60-day time for appeal until the

CFC disposed of it. (JA 878-946.) *See* RCFC 59(a)(1) and (b)(1);

28 U.S.C. § 2522; Fed. R. App. P. 4(a)(1) and (a)(4)(A). The CFC denied

the motion on May 17, 2013 (JA 953-54), and the Estate timely filed a

notice of appeal to this Court on June 7, 2013 (JA 955-56). This Court

has jurisdiction under 28 U.S.C. § 1295(a)(3).

- x -

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

―――――――――

### No. 13-5103

### MORTON LIFTIN, the Estate of,
### JOHN LIFTIN, Executor,

#### Plaintiffs-Appellants

### v.

### UNITED STATES,

#### Defendant-Appellant

―――――――――

## ON APPEAL FROM THE JUDGMENT OF THE
## UNITED STATES CFC
### No. 10-CV-0589 T; Judge George W. Miller

―――――――――

## BRIEF FOR THE UNITED STATES

―――――――――

## STATEMENT OF THE ISSUE

Whether the CFC correctly held that the Estate was not entitled to the refund and abatement of the late-filing penalty assessed against it under I.R.C. § 6651(a)(1), because the Estate failed to show that the delinquent filing of its estate-tax return was due to reasonable cause and not to willful neglect.

- 1 -

## STATEMENT OF THE CASE

The Estate commenced this action in the CFC seeking the refund and abatement of a late-filing penalty assessed against it by the IRS under I.R.C. § 6651(a)(1).  (JA 14-21, 67-79.)  The Estate did not dispute that it was delinquent by nearly two years in filing its tax return, but alleged that it had reasonably relied on the advice of a professional in filing the return late, such that it should be excused from liability for the penalty under the reasonable-cause-and-no-willful-neglect exception in § 6651(a)(1).  (JA 67-79.)

In an opinion and order, the CFC decided the case on the parties' cross-motions for summary judgment.  (JA 1-12.)  It rejected the Government's argument that the Estate's refund suit was barred because it substantially varied from the Estate's administrative claim. (JA 5-7.)  But it held in favor of the Government on the merits, concluding that, even though the Estate's delay of fourteen months in filing the estate-tax return was due to reasonable cause, the remaining delay of nine months was not.  (JA 7-12.)  It sustained the penalty in full, since the maximum penalty imposed by I.R.C. § 6651(a)(1) is reached after the filing of a return becomes delinquent by more than

10558105.1

four months.  (JA 12.)  The court accordingly entered a judgment in favor of the Government.  (JA 13.)  It denied the Estate's motion for reconsideration (JA 953-54), and the Estate now appeals to this Court (JA 955-56).

## STATEMENT OF THE FACTS

### A.    Background—the Estate's filing of its estate-tax return

Mortin Liftin ("decedent") died on March 2, 2003 (JA 353), leaving a gross estate exceeding $3.3 million (JA 309).  He was survived by his wife, Ana Lavandez Liftin ("Mrs. Liftin"), who was a citizen of Bolivia, and not of the United States, at the time of his death.  (JA 68, ¶ 5; JA 522.)  Decedent was also survived by his son, John Liftin ("Liftin"), who was an attorney, and who had been appointed by decedent's will to be the executor of the Estate.[2]  (JA 349, 351, 674.)  To assist with the

---

[2] At the time Liftin became executor of the Estate, he had an extensive legal resume.  He had served as senior vice president and general counsel of Prudential Financial, Inc.; senior vice president and general counsel of Kidder Peabody Group, Inc.; partner at the Washington, D.C., law firm of Rogers & Wells; associate director of the division of market regulation and special counsel to the chairman of the United States Securities and Exchange Commission; and he began his career as an attorney at Sullivan & Cromwell, LLP.  (JA 120-121,128.)

10558105.1

administration of the Estate, Liftin retained attorney John D. Dadakis ("Dadakis"). (JA 526-27.) The two men had become acquainted when both were partners in the law firm Rogers & Wells.[3] (JA 522.)

Dadakis advised Liftin that the Estate would need to file a federal estate-tax return, Form 706, with the IRS, and that the return would need to be filed by December 2, 2003, unless the IRS granted the Estate an extension of time to file and pay the estate tax due.[4] (JA 531-32, 678.) A request for an automatic six-month extension of time in which to file and pay the Estate's federal estate tax was filed with the IRS on behalf of the Estate on November 26, 2003. (JA 480-82, 527-28, 567-68.) Liftin received a courtesy copy of the extension request, and was aware that the Estate was requesting that the IRS extend the due date to June 2, 2004, for timely filing its federal estate-tax return. (JA 480, 570, 680-81.)

---

[3] In addition to having been a partner at Rogers & Wells, Dadakis later became a partner in the law firm of Morrison & Foerster, LLP, which is where he was when retained by Liftin. The concentration of his legal practice was in estate planning, trusts, and estate and gift tax law. (JA 510-514.)

[4] S*ee* I.R.C. § 6075(a)(estate-tax return "shall be filed within 9 months after the date of the decedent's death").

10558105.1

By January 16, 2004, Liftin and Dadakis had "diligently marshaled" and determined the values of the Estate's assets. (JA 582-83.) They had available to them decedent's last will and testament, and decedent's prenuptial agreement with Mrs. Liftin, both providing that Mrs. Liftin was entitled to receive certain bequests and other interests from the Estate. (JA 347-50, 476-78.) Using this information, Dadakis prepared three estimates of the Estate's federal estate-tax liability. (JA 577-581.)

Dadakis's first estimate of the Estate's tax liability assumed that the Estate would proceed by electing I.R.C. § 2056A's qualified domestic trust ("QDOT") provisions. (JA 577-581) The second estimate assumed that Mrs. Liftin would become a naturalized U.S. citizen prior to the filing of the return, such that the Estate could claim a marital deduction under I.R.C. § 2056(a) for property passing to her.[5] (*Id*.) The

---

[5] A marital deduction is not allowable if the surviving spouse is not a U.S. citizen (I.R.C. § 2056(d)(1)), except that the deduction is allowable if the surviving spouse becomes a U.S. citizen before the estate-tax return is filed (I.R.C. § 2056(d)(4)(A)) and has resided in the United States during all of the time between decedent's death and becoming a citizen (I.R.C. § 2056(d)(4)(B)).

- 5 -

10558105.1

third estimate assumed that the Estate could claim neither the benefit

of the QDOT provisions nor a marital deduction.  (*Id.*)

On or about January 16, 2004, the Estate remitted to the IRS a

payment of estimated tax of $877,300 based on the third estimate,

which assumed that the Estate claimed neither the benefits of § 2056A

nor § 2056.  (JA 73, ¶ 38; JA 575-76, 683.)  By letter dated that same

day, the IRS notified the Estate that it had granted the automatic

extension of the due date of its return to June 2, 2004.  (JA 483.)

Dadakis then advised Liftin that the IRS had granted the six-month

extension, and that the Estate would now need to file its return by

June 2, 2004.  (JA 572-74, 683.)

Subsequently, Dadakis and Liftin determined that it would be

more advantageous for the Estate not to claim the benefits of the QDOT

provisions, but for Mrs. Liftin to become a U.S. citizen so the Estate

would qualify for the marital deduction.  (JA 558-62, 589, 603-04, 684-

85.)  They discussed the likely federal estate-tax implications assuming

the return was filed "late"—*i.e.*, subsequent to June 2, 2004.  (*Id.*; JA

555-58.)  Dadakis testified by deposition that he advised Liftin that the

Estate would likely be able, penalty free, to claim a marital deduction

- 6 -

for property passing to Mrs. Liftin, even if the Estate had to file its return "late" (after the extended due date of June 2, 2004). (JA 555-58, 688, 691-93.) Dadakis advised that the return could be filed within a reasonable time after Mrs. Liftin became a U.S. citizen and the disputes between her and the Estate regarding the will and prenuptial agreement were resolved. (JA 555-58, 687, 690-93). Neither Liftin nor Dadakis could recall Dadakis's exact words of advice. (JA 558, 687, 694.)

Liftin knew from his personal experience, however, the importance of meeting filing deadlines, and that late-filed returns generally warranted the imposition of penalties. (JA 683-84, 686, 689-90, 693.) He had thought that the Estate could be penalized if it did not file its tax return by June 2, 2004. (JA 683-84, 686-87). Despite this impression, Liftin did not press Dadakis to explain the precise grounds for his advice, nor did Dadakis explain the basis for his advice. (JA 689.)

Neither Liftin nor Dadakis was sick, ill, incapacitated, or otherwise unavoidably unavailable at or around the return's extended due date of June 2, 2004. (JA 620-21, 694-95.) Liftin, nevertheless, did

- 7 -

not cause the Estate to file a federal estate-tax return by its known, extended due date of June 2, 2004.  (JA 309, 493.)

Approximately four months later, in October 2004, the IRS inquired as to why the Estate had not yet filed its return.  (JA 494, 601.)  Responding on behalf of the Estate, Dadakis explained to the IRS, in a letter dated November 4, 2004, that the Estate intended to delay the filing of its estate-tax return only until Mrs. Liftin became a naturalized U.S. citizen, so that it could claim the marital deduction. The letter did not reference the disputes between Mrs. Liftin and the Estate regarding the will and prenuptial agreement.  (JA 484-85, 602, 604-05.)

On August 3, 2005, Mrs. Liftin became a naturalized U.S. citizen. (JA 70, 486, 607-08.)  During that month, the Estate's representatives, Liftin and Dadakis, learned of Mrs. Liftin's citizenship, but the estate-tax return still was not filed at that time.  (JA 309, 493, 605, 610.)  The Estate's continued filing delinquency was not due to Liftin or Dadakis being sick, ill, incapacitated, or otherwise unavoidably absent at that time.  (JA 620-21, 694-95.)

10558105.1

The Estate, through Dadakis's representation, settled Mrs. Liftin's claims against the Estate in connection with her rights under decedent's will and the prenuptial agreement in February 2006.  (JA 487-90, 614-16.)  The settlement was consistent with the terms of decedent's will and prenuptial agreement.  (JA 487-88.)  Even though Mrs. Liftin's claims were settled, and neither Liftin nor Dadakis was sick, ill, incapacitated, or otherwise unavoidably unavailable, the Estate still did not file its return at that time.  (JA 309, 493, 620-21, 694-95.)

The Estate did not file its federal estate-tax return until May 9, 2006, more than twenty-three months after the extended due date, and more than nine months after the date the Estate became eligible to claim a marital deduction by reason of Mrs. Liftin's becoming a naturalized U.S. citizen.  (JA 309, 493.)  Consistent with the information that Liftin and Dadakis had "diligently marshaled" prior to January 16, 2004, the Estate reported on that return a total gross estate exceeding $3.3 million.  (JA 309, 582-86.)  In addition, the Estate claimed on the return a marital deduction for property passing to Mrs. Liftin, which deduction was also consistent with the information that Liftin and Dadakis had available to them prior to January 16,

- 9 -

2004.  (JA 309-479.)  The Estate reported a tax liability of $678,572.25,

and also reported a $198,727.75 overpayment of tax (*i.e.,* the estimated

tax payment of $877,300 minus the actual tax of $678,572.25), for which

it claimed a refund.  (JA 309.)

## B.    The IRS's assessment of a late-filing penalty and the Estate's filing of an administrative claim for refund

On June 12, 2006, the IRS assessed against the Estate a late-

filing penalty under I.R.C. § 6651(a)(1) in the amount of $169,643.06,

and the IRS applied the Estate's reported overpayment credit to that

penalty assessment (*see* I.R.C. § 6402(a) (authorizing such)).  (JA 71,

¶ 26; JA 492-95.)

Using IRS Form 843, the Estate, by it executor, Liftin, filed an

administrative "Claim for Refund and Request for Abatement" of the

penalty assessed against it.  (JA 305-08.)  The basis for the claim was

set forth in an attachment to the Form 843.  (JA 306-08.)  Liftin alleged

that by June 2, 2004 (the extended due date of the federal estate tax

return), Mrs. Liftin had decided to become a United States citizen; that

I.R.C. § 2056(d)(4) provided that the marital deduction was available

only as long as the surviving spouse became a United States citizen

before the federal estate tax return was made; and that Treas. Reg.

- 10 -

§ 20.2056A-1(b) provided that, for that purpose, a return that was filed late would be considered filed on the actual filing date.  (JA 307 at ¶ 5.) Liftin then stated (*id.*):

> Therefore until Mrs. Liftin became a U.S. citizen, the Estate could not file its Federal Estate Tax Return and still utilize the marital deduction under IRC § 2056.  By the time citizenship would be granted to Mrs. Liftin, in order to have the marital deduction apply under IRC § 2056, the Estate could only file a late return.

Liftin next alleged that Mrs. Liftin had not finalized her citizenship until August 3, 2005, and that the Estate's tax return could not be filed at that time either, because it was still in the process of settling Mrs. Liftin's claims against it, and a settlement had not been finalized until February of 2006.  (JA 307 at ¶ 7.)  Liftin thus explained (*id.*, n. 2):

> Had a return been immediately filed after August 3, 2005, a refund of the overpayment based on an estimated marital deduction would have then been issued.  There would then have been a need to file for a further refund request when the full amount of the marital deduction was determined, which did not appear to be administratively efficient . . ..

In conclusion, Liftin asserted that "[t]hese factors were beyond my control as executor of the Estate and did not result from willful neglect by me to avoid my tax reporting obligations, but were reasonable causes

- 11 -

for not filing the Federal Estate Tax Return (Form 706) on or before the extended due date."[6]  (JA 308.)

The IRS initially determined that it would deny the Estate's claim, and the Estate pursued an administrative appeal.  (JA 496-99.) In an appeal letter, the Estate reasserted its position that it had reasonable cause to file the return late, because the marital deduction was unavailable until Mrs. Liftin obtained her U.S. citizenship.  (*Id.*) The IRS subsequently abated and refunded $33,928.61 of the penalty, leaving an unabated and unrefunded penalty of $135,714.45.  (JA 74, ¶ 45; JA 126, ¶ 45; JA 492-95.)

## C.    The Estate's refund suit filed in the CFC

The Estate filed the instant refund suit in the CFC seeking recovery of the $135,714.45.  (JA 14-33, 67-79.)  As twice amended, the Estate's complaint alleged that Liftin had reasonably relied on the expert advice of Dadakis as to when to file the return, such that the

---

[6] In its administrative claim, the Estate also disputed the IRS's alleged imposition of a late-payment penalty under I.R.C. § 6651(a)(2). (JA 308.)  In the Court of Federal Claims, however, the Government stated that no such penalty was imposed and the Estate dropped its claim.  (JA 204.)

10558105.1

entire nearly two-year filing delinquency should be excused for reasonable cause and lack of willful neglect.  (JA 67-79.)

The Government filed a motion for judgment on the pleadings pursuant to RCFC 12(c), arguing that, even accepting as true the allegations pleaded by the Estate, it could not be relieved of liability for the late-filing penalty imposed by I.R.C. § 6651(a)(1).  (JA 42-66.)  The CFC denied the motion, holding that, viewing the allegations in a light most favorable to the Estate, the Estate may be able to establish that the late filing of its return was due to reasonable cause and not to willful neglect.  (JA 185-93.)

The Estate subsequently filed a motion for summary judgment, together with the declarations of Dadakis and Liftin and excerpts from the deposition of Dadakis.  (JA 194-236.)  The Estate argued that it was undisputed that Dadakis gave expert advice to Liftin that filing of the estate-tax return could be postponed beyond the due date, without penalty, until a reasonable time after the Estate became eligible for the marital deduction (*i.e.,* until Mrs. Liftin became a U.S. citizen) and until after all "ancillary matters" (Mrs. Liftin's claims against the Estate) were resolved.  (JA 207.)  Relying largely on *Estate of La Meres v.*

- 13 -

*Commissioner*, 98 T.C. 294 (1992), the Estate maintained that it met the reasonable-cause-and-no-willful-neglect standard for relief from the late-filing penalty, because Liftin (1) had made full disclosure of all relevant information to Dadakis, (2) had relied in good faith on Dadakis's advice as to the return due date, and (3) did not otherwise know when the return was due.  (JA 206-10.)  *See La Meres*, 98 T.C. at 318.  The Estate argued, moreover, that the late filing of the return could not have been the result of willful neglect, where Liftin had acted in good faith on the expert advice of Dadakis.  (JA 210-11.)

The Government filed a cross-motion for summary judgment, accompanied by the declaration of its counsel and numerous attached exhibits.  (JA 237-707.)  It argued that there was no genuine dispute that Liftin, an experienced attorney, knew when the return was due and had not shown that he was incapable of filing it when due.  (JA 270-72.)  Citing *United States v. Boyle*, 469 U.S. 241, 249 (1985), the Government argued that the Estate did not, therefore, meet its "heavy burden" of showing that it acted reasonably, *i.e.,* with ordinary business care and prudence, when it filed the return nearly two years after the due date.  (JA 273-74.)

- 14 -

In this regard, the Government maintained that Liftin did not reasonably rely on Dadakis's advice that it was permissible for the Estate to wait and file the return late, without penalty, until such time as it could eventually avail itself of the marital deduction and until after all of its "ancillary" matters were resolved.  (JA 270-74, 285-98.) The Government pointed out that, although I.R.C. § 2056 provides that an estate-tax marital deduction is allowable if the surviving spouse is a U.S. citizen at the time the return is filed, nothing in the statute indicates an intent by Congress to permit a penalty-free delay in filing while the non-citizen surviving spouse seeks citizenship.  (JA 285-87.) The Government observed that Liftin had testified by deposition that he understood a penalty would be imposed for filing the return after the June 2, 2004 extended due date, and contended that the Estate could not, therefore, meet the condition for relief set forth in *La Meres,* 98 T.C. at 318, that other than for the expert advice given to Liftin he was unaware of the return's due date.  (JA 287-98.)  The Government further argued that, inasmuch as Liftin knew of the due date of the return and had not shown an incapacity to meet the filing deadline, his

10558105.1

failure to file the return on time constituted willful neglect.  (JA 274-80.)

The Government also contended that, at the very least, the Estate had not shown reasonable cause for delaying the filing of the return for nine additional months following Mrs. Liftin's becoming a U.S. citizen. (JA 866-69.)  That further delay, the Government pointed out, was not based on substantive legal advice by Dadakis, but was based only on Dadakis's mere belief that a further delay—until all of Mrs. Liftin's claims against the Estate were resolved—would not trigger the IRS's imposition of a penalty.  (*Id.*)

The Government contended, in addition, that, because the Estate had not raised its reasonable-reliance-on-counsel theory in its administrative claim for refund filed with the IRS, it was barred by the rule of substantial variance from raising that theory in its refund suit. (JA 280-85, 859-66.)

The CFC issued an opinion and order granting the Government's motion for summary judgment and denying the Estate's motion.  (JA 1-12.)  However, it rejected the Government's contention that the Estate's suit was barred by variance, holding that the theory advanced by the

- 16 -

Estate in its lawsuit did not substantially vary from the theory in its
administrative claim.  (JA 5-7.)  The court next held that the Estate
reasonably relied on Dadakis's expert advice that the return could be
postponed until Mrs. Liftin obtained U.S. citizenship so as to qualify the
Estate for the marital deduction.  (JA 8-11.)  It concluded that Dadakis
had provided Liftin with substantive tax advice about the availability of
the marital deduction under I.R.C. § 2056(d) and Treas. Reg.
§ 20.2056A-1(b), which Liftin could (and did) reasonably rely upon to
file the return late, notwithstanding Liftin's deposition testimony that
he understood the filing deadline to be June 2, 2004.  (*Id.*)

The CFC observed, however, that the Estate's delay in filing the
return lasted for an additional nine months after the Estate became
eligible for the marital deduction.  That further delay was based on
Dadakis's advice that Liftin could wait to file the return until all
"ancillary matters," *i.e.,* Mrs. Liftin's claims, were resolved.  (JA 11-12.)
With regard to that further delay, the CFC held that it was not based
on substantive tax advice and was not, therefore, justified by reasonable
cause.  (*Id.*)  Because the additional delay was sufficient to warrant

- 17 -

assessment of the maximum penalty imposed by I.R.C. § 6651(a)(1), the CFC granted summary judgment to the Government. (JA 12.)

The Estate filed a motion for reconsideration, contending that the CFC erred in holding that there was any difference between Dadakis's advice that waiting until the marital deduction became available justified a late filing and his advice that waiting until ancillary matters were resolved also justified a late filing. (JA 878-946.) The CFC denied the motion (JA 953-54), and the Estate now appeals (JA 956-57).

## SUMMARY OF ARGUMENT

This is a tax refund suit commenced by the Estate to recover a late-filing penalty assessed against it under I.R.C. § 6651(a)(1). It is undisputed that the Estate's executor, Liftin, filed the estate-tax return twenty-three months after the extended due date, and that the Estate may be relieved of the penalty only if it demonstrates that the late filing was due to reasonable cause and no willful neglect.

1. The CFC correctly held that the final nine months of the Estate's delinquency in filing its estate-tax return was not due to reasonable cause. The Estate argues that Liftin reasonably relied on Dadakis's advice that filing could be postponed during those months,

10558105.1

without "triggering" a penalty, while Mrs. Liftin's pending claims against the Estate were being resolved. In fact, Dadakis did not advise Liftin of any substantive tax-law provision that would permit a penalty-free late filing until all claims against the Estate were resolved. So far as the record shows, Dadakis's advice was not based on an interpretation of statutes or regulations, or even case law.

Liftin could not have *reasonably* relied on Dadakis's mere belief, as opposed to his substantive legal advice, that a penalty would not be imposed, and the Estate has not, therefore, demonstrated reasonable cause for the late filing of its estate-tax return. In fact, relevant regulatory provisions obligated the Estate to file a timely return reflecting the most complete information available to it regardless of any unresolved estate matters. Liftin's reasonable reliance is further made suspect by the fact that he was not an unsophisticated executor, but was an experienced attorney in finance and investment matters.

2. Contrary to the CFC's holding below, the Government submits that Liftin also did not act reasonably in relying on Dadakis's advice that filing could be postponed, without penalty, during the first fourteen months of the delinquency period, *i.e.*, until the Estate became qualified

- 19 -

for the marital deduction available at I.R.C. § 2056 when Mrs. Liftin became a U.S. citizen.  Although Dadakis's advice that the marital deduction could be claimed on a late-filed return involved substantive tax law, that advice should not be confused with his non-substantive advice that the return could be filed late without penalty.  Nothing in § 2056 and the regulations thereunder indicates that filing an estate-tax return late in order to claim an otherwise unallowable marital deduction is reasonable cause for avoiding the late-filing penalty imposed by I.R.C. § 6651(a)(1).  There is nothing in the record to indicate that Dadakis advised Liftin of a legal basis for reaching such a conclusion.

The Estate was required to file on or before the extended due date a return as complete and accurate as possible, notwithstanding that not all relevant information was then available to it.  It was not reasonable for Liftin, an experienced attorney, to rely on advice to the contrary.

The judgment of the CFC is correct and should be affirmed.

- 20 -

# ARGUMENT

**The CFC correctly held that the Estate was not entitled to the refund and abatement of the late-filing penalty assessed against it under I.R.C. § 6651(a)(1), because the Estate failed to show that the delinquent filing of its estate-tax return was due to reasonable cause and not to willful neglect**

## Standard of review

This Court reviews *de novo* a grant of summary judgment by the CFC. *Welch v. United States*, 678 F.3d 1371, 1375 (Fed. Cir. 2012); *Abbott Laboratories v. United States*, 573 F.3d 1327, 1330 (Fed. Cir. 2009).

## A.    Introduction

Generally, an estate-tax return, Form 706, must be filed within nine months of the decedent's death.  I.R.C. §§ 6075(a); 6018(a); Treas. Reg. § 20.6075-1.  An extension of time to file the return may be requested of the IRS, but Congress has expressly limited such an extension to six months, except in the case of taxpayers who are abroad. I.R.C. § 6081(a).  Using Form 4768, an executor may apply for an automatic six-month extension of time to file Form 706.  Treas. Reg. § 20.6081-1(b).

- 21 -

Under I.R.C. § 6651 a penalty is imposed where a taxpayer fails

"to file any return . . . on the date prescribed therefor (determined with

regard to any extension of time for filing), unless it is shown that such

failure is due to reasonable cause and not due to willful neglect."  I.R.C.

§ 6651(a)(1).  The penalty amount is five percent of the amount of the

tax required to be shown on the return if the failure is for not more than

one month, with an additional five percent for each additional month or

fraction thereof during which that failure continues, up to a maximum

of 25 percent.  *Id.*  The penalty is "mandatory," unless the taxpayer can

show that the failure was due to reasonable cause and not to willful

neglect.  *Knappe v. United States*, 713 F.3d 1164, 1168 (9th Cir. 2013);

*McMahon v. Commissioner*, 114 F.3d 366, 368 (2d Cir. 1997).

In this context, "willful neglect" means "a conscious, intentional

failure or reckless indifference."  *United States v. Boyle*, 469 U.S. 241,

245 (1985); *see also Fran Corp. v. United States*, 164 F.3d 814, 816 (2d

Cir. 1999).  "Reasonable cause" will excuse a failure to file "[i]f the

taxpayer exercised ordinary business care and prudence and was

nevertheless unable to file the return within the prescribed time."

Treas. Reg. § 301.6651-1(c)(1).  *See Boyle*, 469 U.S. at 246.  The "heavy

burden" of proving both that the failure did not result from willful

neglect and that it was due to reasonable cause falls on the taxpayer.

*Boyle*, 469 U.S. at 245; *Synergy Staffing, Inc. v. United States IRS*, 323

F.3d 1157, 1160 (9th Cir. 2003).

Whether a taxpayer has reasonable cause for failure to file a

return when due is determined using an objective standard. *Boyle*, 469

U.S. at 245. But reasonable cause "is viewed very narrowly because

Congress has charged the taxpayer with an unambiguous, precisely

defined duty to 'ascertain . . . statutory deadline[s] and then to meet

[those] deadline[s].'" *Conklin Bros. of Santa Rosa, Inc., v. United States*,

986 F.2d 315, 317 (9th Cir. 1993) (quoting *Boyle*, 469 U.S. at 249-50)).

The Supreme Court has recognized that, while deadlines to file

returns and pay taxes are "inherently arbitrary," such "fixed dates . . .

are often essential to accomplish necessary results." *Boyle*, 469 U.S. at

249. In *Boyle*, the Supreme Court established the bright-line rule that

reliance on an agent to timely file a return does not constitute

reasonable cause. *Boyle*, 469 U.S. at 252. According to the Supreme

Court, "strict filing standards" are necessary because of the millions of

taxpayers the Government must monitor and because "our system of

- 23 -

self-assessment in the initial calculation of a tax" cannot work

otherwise, because "[a]ny less rigid standard would risk encouraging a

lax attitude towards filing dates." *Boyle*, 469 U.S. at 249. Further,

Congress imposed on the executor, "not on some agent or employee of

the executor," a "fixed and clear" duty to "ascertain the statutory

deadline and then to meet that deadline." *Boyle*, 469 U.S. at 249-50.

The Supreme Court recognized that "a narrow range of

exceptions" may exist to this duty and noted that the Treasury

Regulations and IRS practice acknowledged such circumstances as the

taxpayer's serious illness and other factors beyond the taxpayer's

control that renders him "unable" to file the return on time. *Boyle*, 469

U.S. at 243 n. 1, 248 n. 6, 249-50. *See also* IRM 3.12.106.2.1.8.1(7),

2007 WL 7978847. It is undisputed in this case that the Estate's late

filing of its estate-tax return was not due to any such reason. JA 620-

21, 694-95.)

The Court also recognized the possibility that a taxpayer may

reasonably rely on advice from an attorney or an accountant respecting

a matter of *substantive* tax law. 469 U.S. at 251. *Knappe,* 713 F.3d at

1171. And while the Court expressly did not address the question

- 24 -

whether reliance on the erroneous advice of an advisor as to the due date of a return was reasonable cause (*id.* at 251 n. 9), it observed that "it takes no special training or effort to ascertain a deadline and make sure that it is met" (*id.* at 252).  The Ninth Circuit recently held that "the question of when the estate-tax return was due once an extension had been obtained was a *nonsubstantive* one," and a taxpayer cannot, therefore, reasonably rely on erroneous advice that the return is due at a different time.  *Knappe,* 713 F.3d at 1171 (emphasis added).

In the instant case, in the absence of an extension of time to file the Form 706 estate-tax return, the Estate would have been required to file that return by December 2, 2003, nine months after the decedent's death on March 2, 2003.  (JA 353, 531-32, 678.)  *See* I.R.C. §§ 6075(a), 6018(a); Treas. Reg. § 20.6075-1.  On November 26, 2003, the Estate filed a Form 4768 that provided an automatic six-month extension of time to file the return, until June 4, 2004.  (JA 480-82, 527-28, 567-68.) It is undisputed that the Estate did not file its federal estate-tax return until May 9, 2006, which was more than twenty-three months after the extended due date.  (JA 309, 493.)  As a consequence, the Estate was liable for the late-filing penalty imposed under I.R.C. § 6651(a)(1),

10558105.1

unless it could establish that its failure to file on time was "due to reasonable cause and not to willful neglect."

**B.    The Estate failed to show that that the late filing of its estate-tax return was justifiable because it reasonably relied on the advice of its attorney as to the filing deadline**

**1.    The CFC correctly held that the last nine months of the Estate's filing delinquency was not due to reasonable cause and lack of willful neglect**

In upholding the IRS's assessment of a late-filing penalty against the Estate, the CFC correctly held that the last nine months of the Estate's twenty-three month delinquency were not due to reasonable cause, because that part of the delay in filing the return was based on Dadakis's non-substantive tax advice, *i.e.,* his mere "belief," that filing could be postponed, without triggering a penalty, until all of the Estate's ancillary matters (*i.e.*, Mrs. Liftin's claims against it) were resolved.[7]  (JA 11-12.)  In declarations filed below (JA 228-29, 231-32), Dadakis and Liftin stated that the Estate was advised by Dadakis that it could wait to file the return until a reasonable time after all claims

---

[7] As discussed *infra* in subpart 3, we submit that the Estate failed to demonstrate reasonable cause for any of its delinquency in filing the return.

were resolved without "triggering" the imposition of a late-filing

penalty.  Dadakis further stated (JA 228-229) that the delay in filing

allowed the Estate to prepare a "complete and accurate" return.

As the CFC held, however, evidence is lacking that Dadakis

advised the Estate of substantive tax law permitting a late filing until

all ancillary matters were completed.  So far as the record shows,

Dadakis's advice was not based on an interpretation of statutes or

regulations, or even case law.  Instead, the above declarations

demonstrate that, even according to Dadakis and Liftin, the advice to

delay filing until after ancillary matters were resolved was based only

on a belief that the penalty would not be triggered and not on any

substantive tax law.  The fact that all information relating to "ancillary

matters" was not available to the Estate to allow it to file a "complete

and accurate" return by the due date is wholly beside the point, because

it was obligated to file a timely return reflecting the most complete

information available to it.  *See, e.g.*, Treas. Reg. § 20.6081-1(d) ("A

return as complete as possible must be filed before the expiration of the

extension period" and "supplemental information may subsequently be

filed that may result in a finally determined tax different from the

- 27 -

amount shown as the tax on the return"); *Estate of Cederloff v. United States*, 2010 WL 3548901, at *3-*4 (D. Md. 2010) ("Incomplete information or estate-related litigation will not shield an estate from penalty."); *see also Ferguson v. Commissioner,* 568 F.3d 498, 501 (5th Cir. 2009); *In re Craddock*, 149 F.3d 1249, 1255 (10th Cir. 1998); *Morgan v. Commissioner*, 807 F.2d 81, 83 (6th Cir. 1986); *Jacobson v. Commissioner*, T.C. Memo. 2003-227, 2003 WL 21752458, at *2 (2003).

In its administrative appeal before the IRS, the Estate, by its attorney, Dadakis, stated that filing the return before all ancillary matters were resolved appeared not to be "administratively efficient." (JA 307 at ¶ 7, n. 2.) But Dadakis's interpretation of what he believed to be "administratively efficient" does not supplant the law noted above. Moreover, the record demonstrates that the Estate's representatives had complete information needed to file a return by the due date. (JA 582-86.) In any event, since the requirement of filing a timely return does not turn on whether it is administratively efficient for the taxpayer, the CFC plainly was correct to hold (JA 11-12) that Dadakis's ancillary-matters advice was non-substantive and not reasonable cause for the final nine months of the Estate's filing delay.

- 28 -

>    **2.    The Estate's arguments that the CFC erred in holding that the last nine months of the delinquent filing were not due to reasonable cause are unavailing**

The Estate maintains (Br. 12) that the CFC "artificially bifurcated Dadakis's advice into two separate and distinct pieces."  It endorses the CFC's conclusion that the first fourteen-month delay in filing its return was due to reasonable cause and no willful neglect (Br. 14, 16-18), but it contests the court's conclusion that the further nine-month delay was not due to reasonable cause (Br. 18-25).  The Estate argues (Br. 20-25) that its attorney's expert advice that the return could be postponed until after all ancillary matters were resolved was no less substantive tax advice than was his advice that the return could be postponed until Mrs. Liftin became a naturalized U.S. citizen and the Estate could thus qualify for the marital deduction.

But, as noted above, Dadakis did not advise Liftin of any substantive tax provision that would have allowed a delay in the filing of its return until a reasonable time after all ancillary matters were completed.  Instead, the advice was based only on a personal belief that such a delay would not be penalized.  In contrast, Dadakis's advice regarding the marital deduction was based upon an analysis of statutes

10558105.1

and regulations, and thus involved substantive tax law (but see pp. 33-37, *infra*).  Thus, the CFC had a reasonable basis to differentiate the two.

Moreover, because Dadakis did not, unlike with respect to the marital deduction, explain the basis of his advice that it was reasonable to delay filing the estate-tax return until the disputes with Mrs. Liftin were resolved, Liftin cannot be said to have *reasonably* relied on the advice.  Indeed, if a taxpayer could rely on such vague expert advice, the filing of a return could effectively be postponed indefinitely without penalty.  The record here demonstrates that, despite his knowledge of the statutory return due date, Liftin did not press Dadakis to explain the precise grounds for advice that the return could be filed late.  (JA 689.)

In the circumstances of this case, moreover, the reasonableness of Liftin's reliance on Dadakis's advice is rendered further suspect by the fact that Liftin, himself, was not an unsophisticated executor of the Estate, but was an experienced attorney in finance and investment matters who could not have *reasonably* relied upon the advice given. (JA 120-121,128.)  *See  Nevada Partners Fund, L.L.C. ex rel.*

- 30 -

10558105.1

*Sapphire II, Inc. v. United States ex rel. I.R.S.*, 720 F.3d 594, 619 (5th Cir. 2013) (in seeking relief from negligence penalties, taxpayers' contention they reasonably relied on expert advice rejected, because they were sophisticated investors); *Coleman v. Commissioner*, T.C. Memo. 1990-511, 1990 WL 138153 (1990) (in rejecting reasonable-cause defense to negligence penalty, court held that experienced attorney did not reasaonbly rely on expert opinion concerning legitimacy of tax-shelter program). *Cf. Estate of DiPalma v. Commissioner,* 71 T.C. 324, 327 (1978) (finding that the executrix "was led to believe by the attorney for the estate that the pending dispute . . . justified the delay in the filing of the return" and concluding that "*[i]nexperienced as she was in such matters*, we think that she was justified in relying on her belief, albeit that such belief was, in point of fact, erroneous" (emphasis added)).

As it did below, the Estate places considerable reliance on appeal on *Estate of La Meres v. Commissioner*,  98 T.C. 294 (1992), to maintain that it satisfied the conditions set forth in that case for establishing reasonable reliance on its expert's advice as to the due date of its estate-tax return.   (Br. 16-18, 19, 22.)  There, the Tax Court analyzed and

- 31 -

categorized a number of reasonable-reliance cases and set forth a mult-prong test.  98 T.C. at 315-320.  Under *La Meres*, the taxpayer must establish that he met the following conditions in order to establish reasonable cause:  (1) that he made full disclosure of all relevant information to an expert, (2) that he relied in good faith on the expert's advice as to the return due date, and (3) that he did not otherwise know when the return was due.  98 T.C. at 316-17.  Thus, the Tax Court has not applied a hard-and-fast rule that the determination of a return due date involves non-substantive tax law as has the Ninth Circuit in *Knappe, supra.*

At all events, contrary to the Estate's contention, the Estate does not satisfy the *La Meres* conditions for relief.  Evidence exists in the summary judgment record that Liftin knew that the original statutory due date of the Estate's return (I.R.C. § 6075(a)) was December 2, 2003, and, upon the Estate's request, was extended according to statute (I.R.C. § 6081(a)) to June 2, 2004.[8]  (JA 683-84, 686-87, 689-90, 693.)

--------

[8] In his declaration filed with the Estate's motion for summary judgment, Liftin stated that he did not have knowledge independent of Dadakis's advice of the exact due date of the return.  (JA 232, ¶ 7.)  It is

(continued…)

10558105.1

He was also aware that filing the return beyond the extended due date could subject the Estate to a penalty. (*Id.*) He nevertheless chose to follow non-substantive advice that he could delay filing the return until after the Estate was able to resolve all ancillary matters. This fact not only indicates that the Estate fails to meet *La Meres's* third condition for relief–that the taxpayer did not otherwise know when the return was due—it also suggests willful neglect of the Estate's duty to file the return timely. *See Boyle*, 469 U.S. at 245 ("willful neglect" means a "conscious, intentional failure or reckless indifference" to the duty to file the return when due).

> **3.     The Estate's reliance on Dadakis's advice does not constitute reasonable cause and lack of willful neglect for any part of the nearly two-year delay in the filing of its estate-tax return**

The CFC held that the first fourteen months of the Estate's delinquency in filing the return *were* due to reasonable cause, because

---

(…continued)
unclear what Liftin meant by this declaration, but it is clear from his sworn deposition testimony that he knew that the Internal Revenue Code set an unambiguous return filing deadline of nine months after the decedent's death, which in this case was December 2, 2003, and that the IRS had granted the Estate an extension of six months to June 2, 2004. (JA 683-84, 686-87, 689-90, 693.)

- 33 -

that part of the delay was based on Dadakis's substantive tax advice that filing of the return could be postponed, without penalty, until Mrs. Liftin obtained U.S. citizenship and the Estate could then qualify for the marital deduction at I.R.C. § 2056(a).  (JA 8-11.)  The Government submits that the Estate failed to demonstrate reasonable cause and lack of willful neglect with respect to any of the twenty-three months it was delinquent.

To be sure, Dadakis's advice concerning the availability of the marital deduction under I.R.C. § 2056(d) involved a matter of substantive tax law, but that should not be confused with whether Dadakis's additional advice—that the estate-tax return could be late filed without penalty—involved a matter of substantive tax law.  *See Knappe,* 713 F.3d at 1171, 1174 (expert's erroneous advice as to extended due date of return was not based on substantive tax law, and reliance on it was not reasonable cause for filing late).  The relevant marital deduction statute, I.R.C. § 2056(d), provides in paragraph (1) that a martial deduction is not allowable if the surviving spouse is not a U.S. citizen, but paragraph (4) provides, as relevant, that, if the surviving spouse becomes a U.S. citizen before the time the return is

- 34 -

made, the deduction is allowable. Under Treas. Reg. § 20.2056A-1(b), a return that is filed late in order to satisfy I.R.C. § 2056(d)(4) "is considered filed on the date it is actually filed."

In other words, even if a non-citizen surviving spouse does not become a U.S. citizen before the estate-tax return is due, I.R.C. § 2056(d)(4) permits the marital deduction to be claimed on a late-filed return after she becomes a citizen. The return is still considered late under Treas. Reg. § 20.2056A-1(b), however, and, absent any contrary statutory or regulatory provision, its late filing results in imposition of a penalty under I.R.C. § 6651(a)(1). In fact, nothing in the pertinent statutes or regulations lends support for the proposition that filing of the return can be delayed, without penalty, until a non-citizen surviving spouse seeks and obtains U.S. citizenship. There is nothing in the record to indicate that Dadakis cited a legal basis for reaching such a conclusion. In the end, his tax advice that the filing due date could be postponed in these circumstances was no more substantive than his advice that filing could be postponed until all of Mrs. Liftin's claims against the Estate were resolved. The advice in both situations was not based on substantive law, *i.e.*, statutes, regulations or case law. Rather,

- 35 -

10558105.1

in both situations, the advice was non-substantive as it was based on

Dadakis's personal belief that, in the circumstances, a penalty would

not be triggered by a late filing.

What the Ninth Circuit said in *Knappe,* 713 F.3d at 1174-75, is

particularly relevant:

> Reliance on erroneous advice about nonsubstantive tax
> law issues cannot constitute reasonable cause for an
> executor's failure to file a timely return.

> \*          \*          \*          \*          \*

> We acknowledge that the result today imposes a heavy
> burden on executors, who will affirmatively have to ensure
> that their agents' interpretations of filing and payment
> deadlines are accurate if they want to avoid penalties.  This
> burden is justified by the government's substantial interest
> in ensuring that returns are timely filed.

As previously discussed (at pp. 30-31), moreover, Liftin was not an

unsophisticated executor, but was an experienced attorney in finance

and investment matters.  His reasonable reliance on Dadakis's advice

that filing of the return could be delayed without penalty is thus

dubious.  As is also discussed above (at pp. 27-28), in order to avoid the

late-filing penalty, the Estate was required to file on or before the

extended due date a return as complete and accurate as possible,

notwithstanding that not all relevant information was then available to

- 36 -

it.  Because the aforementioned marital-deduction provisions do not provide a reasonable-cause exception for the late filing of an estate-tax return, it was up to the Estate's representatives to determine whether it was nevertheless worthwhile to claim the marital deduction on a late return. [9]

In sum, we submit that the Estate failed to demonstrate reasonable cause and lack of willful neglect for any portion of its delay in filing its estate-tax return.

---

[9] Worthy of note is the fact that, even with imposition of the penalty here, the Estate's decision to postpone the filing of its return was to its economic advantage.  Without the marital deduction, the Estate's tax liability would have been $877,300, an amount substantially greater than the $814,286 of tax and penalty actually incurred after allowance of the marital deduction (*i.e.,* tax of $678,572 plus a penalty of $135,714).  (JA 309, 493, 577-87.)

- 37 -

# CONCLUSION

For the foregoing reasons, the judgment of the Court of Federal Claims should be affirmed.

Respectfully submitted,

KATHRYN KENEALLY
  *Assistant Attorney General*

/s/ John A. Nolet

KENNETH L. GREENE          (202) 514-3573
JOHN A. NOLET              (202) 514-2935
  *Attorneys*
  *Tax Division*
  *Department of Justice*
  *Post Office Box 502*
  *Washington, D.C. 20044*

SEPTEMBER 2013

- 38 -

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing brief with

the Clerk of the Court for the United States Court of Appeals for the

Federal Circuit by using the appellate CM/ECF system on

September 27, 2013.  Other participants in the appeal, all of whom are

registered CM/ECF users, will receive electronic service of the brief via

the CM/ECF system.


        /s/ John A. Nolet
        JOHN A. NOLET
        *Attorney*

10558105.1

# CERTIFICATE OF COMPLIANCE

## With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

   [X]    this brief contains  **8,161**  words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   [ ]    this brief uses a monospaced typeface and contains [*state the number of*]        lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [X]    this brief has been prepared in a proportionally spaced typeface using <u>Microsoft Word 2010</u> in <u>14-point Century Schoolbook</u>; *or*

   [ ]    this brief has been prepared in a monospace typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

(s)   /s/ John A. Nolet
Attorney for      the United States
Dated:      September 27, 2013

- 40 -